**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **FADUMO A. GEELE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:14-cv-01836** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Fadumo A. Geele's Motion for Judgment on the Administrative Record (Doc. No. 21), to which Defendant Social Security Administration ("SSA") has responded (Doc. No 19). Plaintiff filed a reply to the SSA's response. (Doc. No. 27.) Upon consideration of the parties' briefs and the transcript of the administrative record (Doc. No. 10),[1] and for the reasons set forth below, Plaintiff's Motion for Judgment will be DENIED and the decision of the SSA will be AFFIRMED.

### I.  Magistrate Judge Referral

In order to ensure the prompt resolution of this matter, the Court will VACATE the referral to the Magistrate Judge.

### II.  Introduction

Plaintiff filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act and an application for supplemental security income ("SSI") under Title XVI of the Social Security Act on January 2, 2008, alleging disability onset as of March 27, 2007.

---

[1] Referenced hereinafter by "Tr." followed by the page number found in bolded typeface at the bottom right corner of the page.

(Tr. 166.)[2]  Plaintiff claimed that the following conditions limited her ability to work:  back pain, disc disorder and dizziness.  (Tr. 189.)  Her claim to benefits was denied at the initial and reconsideration stages of state agency review.  Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ").  ALJ Linda J. Helm heard her case, via video conference, on February 22, 2010, when Plaintiff appeared with counsel and gave testimony.  (Tr. 25-55.)[3]  Testimony was also received from a vocational expert.  (Id.)  At the conclusion of the hearing, the matter was taken under advisement until March 24, 2010, when ALJ Helm issued a written decision finding Plaintiff not disabled.  (Tr. 11-19.)  Plaintiff appealed ALJ Helm's decision to this Court in Fadumo A. Geele v. Social Security Admin., Case No. 3:11-cv-0492 (M.D. Tenn. Oct. 26, 2011) (Wiseman, J.) hereinafter referred to as ("Geele I.")  Plaintiff filed her Complaint on May 24, 2011.  (Geele I, Doc. No. 1.)  Defendant filed an Answer on August 9, 2011.  (Id. at Doc. No. 9.)  Before Plaintiff could file her Motion for Judgment on the Administrative Record, on October 25, 2011, Defendant filed a Motion for Remand so that the SSA could "evaluate the medical opinion evidence, including updated information from Plaintiff's treating source; and . . . consider evidence submitted by Plaintiff but not included in the administrative record." (Geele I, Doc. No. 16.)  On October 26, 2011, the

---

[2] The Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Part 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Part 416 of the regulations) are substantially identical.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003) (noting that the Title II and the Title XVI definition of "disability" is "verbatim the same" and explaining that "[f]or simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI.")  The Court cites to the regulations interchangeably.

[3] Plaintiff's original hearing date was October 16, 2009.  (Tr. 57-63.)  Plaintiff appeared before the ALJ on that date, however, because Plaintiff was unrepresented, her counsel having withdrawn at an earlier date, she sought additional time within which to obtain a new attorney. (Tr. 60.)  Additionally, Plaintiff had difficulty communicating in English, so the ALJ planned to obtain a Somali interpreter for the rescheduled hearing.  (Tr. 61-62.)  The reschedule hearing ultimately took place on February 22, 2010.

Court granted Defendant's Motion and remanded the case to the Social Security Administration. (Geele I, Doc. 18.) On November 30, 2011, the Appeals Council issued an order remanding Plaintiff's case to an ALJ for further consideration. (Tr. 749-54.) Specifically, the Appeals Council directed the ALJ to:

1. Give further consideration to the medical opinion evidence of record, including the medical source opinion of Noel Lim, M.D., dated March 1, 2010, and his subsequent assessment clarifying the opinion of March 2010; and explain the weight given to such opinion evidence. If necessary, the Administrative Law Judge shall recontact the treating source and obtain additional clarification in order to assure that the record contains adequate evidence to reach a decision as to whether the claimant is disabled. (20 CFR 404.1512(e) and 416.912(e)).

2. Give further consideration to the documents received from Summit Medical Center, which were scanned into the electronic folder on December 4, 2009, and contain medical evidence that is relevant to the period under consideration before the Administrative Law Judge.

3. Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion pursuant to the provisions of 20 CFR 404.I 527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment (20 CFR 404. 1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

4. If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the

occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 752.)

ALJ Scott C. Shimer heard the case on June 28, 2012. (Tr. 693-721.) Plaintiff appeared with counsel and gave testimony. (Id.) Testimony was also received from an impartial vocational expert. (Id.) At the conclusion of the hearing, the matter was taken under advisement until November 30, 2012, when ALJ Shimer issued a written decision finding Plaintiff not disabled. (Tr. 873-882.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 27, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq.*).

3. The claimant has the following severe impairment: lumbar annular tear and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing, walking, and/or sitting a total of six hours each during an eight-hour workday but requires a sit/stand at will option every 1-2 hours; and occasionally balancing, stooping, kneeling, crouching, and crawling but never climbing ladders/ropes/scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 1, 1977 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

4

8. The claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 27, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 675-76,684-86.)

The Appeals Council denied Plaintiff's request for review of ALJ Shimer's decision[4] (Tr. 526-34), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence based on the record as a whole, then those findings are conclusive. Id.

### III. Review of the Record

The following summary of the medical record is taken from the ALJ's decision:

As required by the remand order, the undersigned has thoroughly evaluated the evidence from Summit Medical Center at Exhibit 17F. Although this exhibit details treatment prior to the alleged onset date, it documents two complaints of back pain. In April 2005, the claimant was diagnosed with lumbosacral strain. An exam at that time showed tenderness to left lumbar area but full motion in the lower extremities without pain and no motor or sensory deficits. In June 2006,

---

[4] The decision of the Appeals Council was not dated; however, computer records of the Appeals Council noted that it had completed its consideration of Plaintiff's case as of September 21, 2013. (Tr. 526.)

the claimant was diagnosed with thoracolumbar strain. The physical exam showed tenderness over the thoracolumbar paravertebral muscles but negative straight leg raise and non-antalgic gait. The claimant participated in physical therapy during July and August 2006 (Exhibit 17F).

Medical records from 2007 document an exam in May that showed full neck motion, slight discomfort in the left flank, no motor or sensory deficits, and normal reflexes (Exhibit 25F). An exam in July showed positive straight leg raise on left but no spinal tenderness and a full range of spinal motion. Treatment consisted of over-the-counter Tylenol and a 5-day Prednisone taper (Exhibits 2F, 3F). An MRI from August 2007 showed 5 mm broad central disc protrusion at L5- S1 without neural displacement: shallow left paracentral disc protrusion at L1-2 without neural displacement; and annular tear at L3-4 with a disc protrusion symmetric to the right impinging on the right S1 nerve root in the lateral recess (Exhibit 5F). The claimant was prescribed Darvocet for pain. By October, the claimant reported improvement with Darvocet. It was noted that she did not participate in physical therapy. An exam was unremarkable with negative neurologic findings. Back pain was reported with straight leg raising, tenderness in lumbar spine and some pain with neural truck twisting; however, there were no neurological abnormalities. In November, she continued to report that she was doing better with Darvocet. In fact, she did not want to proceed with recommended epidural injections (Exhibits 2E 3F). An EMG[5] study of the bilateral upper and lower extremities was considered normal (of note, this study was signed by neurologist Noel Lim, M.D.) (Exhibit 10F).

As required by the remand order, the undersigned has thoroughly evaluated the evidence from Summit Medical Center at Exhibit 18F, which documents treatment during 2008 and 2009. In January 2008, the claimant reported back pain after lifting a playpen. An exam showed diminished motion with discomfort but no motor or sensory deficit (Exhibit 18F). Treatment consisted of Robaxin. At a follow up visit an exam showed full spinal motion with no pain on movement and no motor or sensory deficit. The claimant reported that Robaxin was working well and she again declined epidural injections (Exhibits 3F, 5F). The claimant began physical therapy in June 2008. At this time, she was taking Lortab, and she reported that physical therapy was helping and that her back pain was off and on (Exhibit 8F). A MRI from September 2008 showed: mild bulging

---

[5] EMG stands for electromyography. Electromyography "is a diagnostic procedure to assess the health of muscles and the nerve cells that control them (motor neurons). A nerve conduction study, another part of an EMG, uses electrodes taped to the skin (surface electrodes) to measure the speed and strength of signals traveling between two or more points. EMG results can reveal nerve dysfunction, muscle dysfunction or problems with nerve-to-muscle signal transmission." Electromyography (EMG), Mayo Clinic Staff, Mayo Foundation for Medical Education and Research, Jan. 20, 2017 found at http://www.mayoclinic.org/tests-procedures/emg/basics/definition/prc-20014183 (last visited 7/5/17).

at L1-2 that mildly indented the ventral thecal sac; mild bulging at L2-3 that mildly indented the ventral thecal sac; mild bulging al L3-4 that slightly indents the ventral thecal sac with a small annular fissure or tear; mild bulging at L4-5 that mildly indented the ventral thecal sac; and mild bulging at L5-S1 that contacts the nerve roots in the lateral recess but does not displace or compress these nerve roots and mild facet degenerative changes bilaterally (Exhibit 8F). November 2008, the claimant reported low back pain after a recent fall while bathing her child.  An exam showed 'very poor effort' and no motor or sensory deficits (Exhibit 18F).  An MRI of the thoracic spine in December 2008 showed minimal discogenic disease within the mid-thoracic spine without central canal or neural foraminal stenosis (Exhibit 18F).

As stated above, the claimant attended physical therapy from June 2008 through March 2009 and consistently reported a decrease in her overall symptoms (Exhibit 7F).  She was discharged in April 2009 and the therapist noted that she had not met all treatment goals due to noncompliance (Exhibit 7F).

Medical records during 2009 show that the claimant began treatment with neurologist Noel Lim, M.D.  As stated above, Dr. Lim signed a previous normal EMG study dated November 2007; however, the record does not show evaluations of the claimant by Dr. Lim until February 2009 when he documented lumbar pain and muscle spasm but 5/5 motor strength.  Treatment consisted of a back brace (Exhibit 11F).  During March, the claimant reported that physical therapy helped her leg pain but not her back pain; however, it was noted that she had not needed Lortab recently (Exhibit 8F).  In May, the claimant attended a follow up visit with Dr. Lim.  He noted 5/5 motor strength and recommended epidural injections, which were again declined (Exhibit 11F).  The claimant was noted to have normal gait and station in June (Exhibit 8F).  In July, x-rays showed mild anterior spurring at L2-3 and L3-4.  A physical exam showed full extremity motion with no motor or sensory deficit (Exhibit 18F).  The claimant attended a follow up visit with Dr. Lim in October when he noted decreased sensation in the left foot but no motor deficits, normal fine finger movements, and normal gait and station (Exhibit 11F). In November, the claimant's low back pain was treated with Lortab 5/500 every 12 hours as needed, Flexeril 10 mg nightly, Lyrica 75 mg twice a day, and Celebrex 200 mg daily (Exhibit 8F).  Dr. Lim again noted decreased sensation in the left foot but no motor deficits, normal fine finger movements, and normal gait and station during December (Exhibit 14F).

Medical treatment during 2010 shows that in January, Dr. Lim continued to show decreased sensation in the left foot but no motor deficits, normal fine finger movements, normal gait and station.  An EMG study was again normal (Exhibits 12F, 13F, 14F).  The claimant reported left foot pain after lifting a case of water in June 2010.  An exam showed normal extremity motion, no neurological deficits, and normal gait (Exhibit 20F).  An exam in October 2010 showed normal extremity motion with no neurological deficits (Exhibit 20F).

In February 2011 the claimant sought treatment for nausea and vomiting. An EGD showed H-pylori infection that was treated with the medication Metoclopramide. An abdominal ultrasound was normal. The claimant failed to attend two follow up appointments (Exhibits 23F, 24F).

In December 2011, the claimant was evaluated due to mild neck pain after a motor vehicle accident. The exam showed painless range of neck motion with no tenderness, normal back motion with no tenderness, normal extremities, and no motor or sensory deficits. Imaging of the cervical spine showed no fracture or subluxation. Lumbar spine imaging showed slight degenerative spurring and disc space narrowing at L2-3 and L3-4 (Exhibit 21F). The claimant received chiropractic care from December 2011 through February 2012. On the New Client Information form, the claimant wrote that she was in 'excellent' overall health and that she performed 'light labor' at her TJ Maxx job. The chiropractor noted on February 9, 2012 that the claimant had full range of cervical motion (Exhibit 22F).

Of note, the record contains five exhibits that were submitted subsequent to the June 2012 hearing. These records have been thoroughly reviewed and have been incorporated, where relevant into the medical history outlined above. The most extensive record is Exhibit 25F, which covers the years 2006 through 2011; however, this record is generally irrelevant to the issue at hand, as it relates to the claimant's pre- and post-natal history throughout the period. Again, this record has been reviewed and has been incorporated, where relevant, into the medical history outlined above.

(Tr. 678-80.)

## IV. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing]

8

into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

**B. The Five-Step Inquiry**

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

9

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule.  See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611,

615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity (RFC) at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

In Plaintiff's first claim of error, she argues that ALJ Shimer violated this Court's October 26, 2011 remand Order and the subsequent order entered by the Appeals Council by failing to properly consider the records and opinions of Plaintiff's treating physician, Noel Lim, M.D.

Federal courts within this Circuit have not universally agreed on "whether an ALJ's failure to follow Appeals Council directives in a remand order may serve as independent grounds for reversal absent other error." Compare Godbey v. Colvin, No. 1:13-cv-00167-HBB, 2014 WL 4437647, at *8 (W.D. Ky. Sept. 9, 2014) (finding that "an administrative law judge's failure to follow specific directives in the Appeals Council's order is an error that requires a remand to the Commissioner when it makes meaningful judicial review of the administrative law judge's

decision impossible) with Brown v. Comm'r of Soc. Sec., No. 1:08-cv-183, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009) (finding that remand is not appropriate because "whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision").  "The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand." Shope v. Comm'r of Soc. Sec., No. 2:14-cv-2055, 2015 WL 3823165, at *8 (S.D. Ohio June 19, 2015), report and recommendation adopted, No. 2:14-cv-2055, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015) (collecting cases).  In Shope, the district court explained the reasoning behind this conclusion as follows:

> When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. Under such circumstances, a court called upon to review the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge. Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision. The Appeals Council had an opportunity to review the administrative law judge's compliance with its directives, and it did not remand the matter a second time. This court has no authority to review the decision of the Appeals Council, and Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process.

Shope, 2015 WL 3823165 at * 9 (internal citations and quotation marks omitted).

The Court agrees with the above reasoning and concludes that it lacks jurisdiction to consider whether ALJ Shimer complied with the requirements of the Appeals Council's Order of Remand. This reasoning is particularly persuasive in the instant case as the Appeals Council reviewed ALJ Shimer's November 30, 2012 decision following the original remand and denied Plaintiff's request for review citing to specific portions of ALJ Shimer's decision in support of

its denial. (Tr. 531-32.) See Llaneza v. Comm'r of Soc. Sec., No. 2:15-cv-2437, 2016 WL 4054918, at *13 (S.D. Ohio July 29, 2016), report and recommendation adopted, No. 2:15-cv-2437, 2016 WL 4398673 (S.D. Ohio Aug. 18, 2016) ("the Appeals Council had an opportunity to review the ALJ's compliance with its directives upon appeal of [his] decision. The Council, however, did not remand the matter a second time. This Court has no authority to review the decision of the Appeals Council."); Brown, 2009 WL 465708 at * 6 ("[b]y failing to remand the matter a second time, it appears that the Appeals Council considered the ALJ's . . . review to be in compliance with the Council's previous order of remand. . . .")

Even if the Court had jurisdiction to consider this claim, ALJ Shimer fully complied with the Appeals Council's remand order, (Tr. 751-53), by giving: (1) further consideration to medical opinion evidence of record, including the three medical source statements submitted from Noel Lim, M.D., Plaintiff's treating physician (Tr. 680-83); (2) further consideration to the documents received from Summit Medical Center which were submitted on December 4, 2009 (Tr. 678); (3) further consideration to the claimant's maximum RFC capacity (Tr. 682-3); and (4) by obtaining additional testimony from a VE, (Tr. 715-20).

Plaintiff also claims that ALJ Shimer violated the Court's remand order. The Court remanded this case in response to the SSA's motion for remand to allow for further evaluation of the record. See Geele I, No. 3:11-cv-0492, Doc. No. 18. Thus, this Court's remand order is coterminous with the Appeals Council's remand order; compliance with one order is compliance with both.

In Plaintiff's second claim of error, she argues that ALJ Shimer violated the treating physician rule by failing to give Dr. Lim's opinions controlling weight, but instead giving them no weight, and by failing to explain why Dr. Lim's opinions were not entitled to controlling

weight, or any weight at all. Specifically, Plaintiff argues that ALJ Shimer inappropriately failed to give Dr. Lim's opinions controlling weight when he found that: (1) Dr. Lim did not treat Ms. Geele after he submitted his first medical sources statement, the inference being that he had no basis upon which to make changes to his subsequent medical source statements; (2) Dr. Lim's limitations were "ever-changing;" and (3) Dr. Lim's limitations were not supported by his treatment notes, he evaluated Plaintiff only 5 times after the 11/29/07 EMG and imaging reports which Dr. Lim may have reviewed also failed to support his restrictive limitations. (Doc. No. 3 at Page ID# 1455.) Plaintiff argues that none of these findings is sufficient to support ALJ Shimer's conclusion that Dr. Lim's opinions were not entitled to controlling weight.[6]

The ALJ is generally required to accord the opinion of a claimant's treating physician substantial deference. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Such deference, however, is due only when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" before the ALJ. 20 C.F.R. § 404.1527(c) (2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001). Likewise, an ALJ may reasonably find that a medical opinion that is inconsistent with other evidence in the record or that is internally inconsistent is unreliable.

---

[6] Curiously, Plaintiff does not suggest which of Dr. Lim's medical source statements, or which portions of his statements, should have been given controlling weight, or whether some combination of the three statements should have been controlling. It is not immediately obvious whether Plaintiff would suggest that the third medical source statement should have been controlling because it had some less severe restrictions than Dr. Lim's first medical source statement. For example, in the third medical source statement Dr. Lim opined that Plaintiff could lift or carry up to 10 pounds for 1 hour in an 8 hour workday, while in his first medical source statement he opined that Plaintiff could lift or carry only 5 pounds for 1 hour in an 8-hour work day. (Compare Tr. 521 with Tr. 1220.)

See Vorholt v. Comm'r of Soc. Sec., 409 F. App'x 883, 887-889 (6th Cir. 2011); see also White v. Comm'r, 572 F.3d 272, 286 (6th Cir. 2009) (holding that an ALJ's finding that a medical opinion conflicts with other evidence in the record is a sufficient reason to discount the opinion); 20 C.F.R. § 404.1527(d)(4) (providing that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Additionally, an opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. See Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir. 1990); see also Francis v. Comm'r Soc. Sec. Admin, 414 F. App'x 802, 804 (6th Cir. 2011) (noting that a physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all."). Rather, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [an ALJ] will give that opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); see also Bell v. Barnhart, 148 F. App'x 277, 285 (6th Cir. 2014) (declining to give weight to a doctor's opinion that was supported by only the claimant's reported symptoms).

Ultimately, the determination of disability is "the prerogative of the Commissioner, not the treating physician." Warner, 375 F.3d at 390 (quoting Harris v. Heckler, 726 F.2d 431, 435 (6th Cir. 1985)). As such, a treating physician's opinion that a patient is disabled is not entitled to any special significance. See 20 C.F.R. §§ 404.1527(d)(1)(3), 416.927(d)(1)(3); Bass v. McMahon, 499 F.3d 506, 511 (6th Cir. 2007); Sims v. Comm'r of Soc. Sec., 406 F. App'x 977, 980 n.1 (6th Cir. 2011) (recognizing that "the determination of disability [is] the prerogative of the Commissioner, not the treating physician.")

If the ALJ decides not to accord the opinion of a treating physician controlling weight, the ALJ relies on a number of factors—including the length of the treatment relationship, the

frequency of evaluation, nature and extent of the treatment relationship, how well supported by medical evidence the treating physician's opinion is, the consistency of the treating physician's opinion with the record as a whole, and whether the treating physician is a specialist—to determine how much weight to give the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(6). Where the ALJ finds that the treating physician is not entitled to controlling weight, the regulations require the ALJ to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Consequently, a decision denying benefits has to state "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188 at *5 (1996). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." Wilson, 378 F.3d at 544.

Although courts prefer that they do so, ALJs need not explicitly mention in their decisions every factor under 20 C.F.R. § 404.1527(c) when determining the weight to give the opinion of a treating physician. See Adams v. Astrue, No. 1:07-cv-2543, 2008 WL 9396450, at *3, n.5 (citing Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004)). Nevertheless, ALJs must still conduct an analysis sufficient for the court to engage in a "meaningful review of the ALJ's application of the [treating physician] rule." Wilson, 378 F.3d at 544.

As an initial matter, contrary to Plaintiff's contention, ALJ Shimer did not fail to give Dr. Lim's opinions any weight. Rather, ALJ Shimer found that Dr. Lim's opinions were entitled to "little weight." Likewise, ALJ Shimer did not fail to give good reasons in support of his finding

that Dr. Lim's opinions were entitled to "little weight." Indeed, as will be discussed in more detail below, ALJ Shimer extensively discussed his reasoning.

With respect to Plaintiff's contention that ALJ Shimer could have, but failed to obtain additional information from Dr. Lim about why he changed his medical source statements from one to the next, instead of simply presuming that Dr. Lim had no communication with Plaintiff before preparing the second and third medical source statements. Plaintiff does not dispute ALJ Shimer's finding that there was no evidence in the record demonstrating that Dr. Lim treated Plaintiff after January, 2010. Thus, even assuming that there was additional communication between Plaintiff and Dr. Lim and that Dr. Lim changed his assessment regarding the impact of Plaintiff's impairments after speaking with her, Dr. Lim's opinions would not be entitled to controlling weight because any such changes would be based on Plaintiff's subjective complaints about her condition. See e.g., Keeler v. Comm'r of Soc. Sec., 511 F. App'x. 472, 473 (6th Cir. 2013) (holding that the ALJ properly discounted the weight normally given to treating physician opinions in part because the treating physician's opinion "appeared to be based primarily on [the claimant's] subjective complaints"); Walton v. Comm'r of Soc. Sec., 60 F. App'x 603, 610 (6th Cir. 2003) (finding that the magistrate judge reasonably inferred that treating physician's opinions were based on Plaintiff's subjective complaints where opinions were unsupported by objective medical findings and physician had not seen Plaintiff for approximately 8 months between the time of his first set of opinions and the time of his last set of opinions).

Moreover, as explained above, Plaintiff bears the burden of proof through step four of the five-step sequential process. See Walters v. Comm'r, 127 F.3d 525, 529 (6th Cir. 1997). Consequently, it was her burden to ensure that the record was whole and that the ALJ had all the evidence, medical or otherwise, necessary to adjudicate her claim. See Bowen v. Yuckert, 482

17

U.S. 137, 146 (1987); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). That the remand order authorized ALJ Shimer to obtain additional clarification from Dr. Lim "if necessary," did not obviate Plaintiff's obligation to satisfy the burden of proving disability. Plainly, ALJ Shimer believed that he had sufficient information to weigh Dr. Lim's medical opinions and found it unnecessary to obtain additional clarification.

Plaintiff next contends that contrary to ALJ Shimer's finding, Dr. Lim's assessments of Plaintiff's RFC did not significantly change over time. To be sure, Dr. Lim's three medical source statements were not different in every respect; however, as identified by ALJ Shimer, they differed in important respects without any explanation or citation to objective medical evidence to support the change. Dr. Lim submitted three separate medical source statements. The medical source statements are comprised of a type of check-the-box form, with areas for comments, and a section seeking specific information, on the form or in a separate letter, describing "the aspects of the (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnoses (statement of disease or injury based on its signs and symptoms); and (5) treatment prescribed with response and prognosis upon which you based your opinion . . . ." (See Tr. 521-24, 1052-55, 1220-22.) As summarized by ALJ Shimer, the first medical source statement (hereinafter "MSS 1"), submitted in March 2010, set forth the following limitations regarding Plaintiff's RFC:

> lift and/or carry up to 5 pounds for 1 hour during an eight-hour workday; sit 2-3 hours at one time and only 2-3 hours total during an eight-hour workday: stand/walk 2-3 hours at one time and only 2-3 hours total during an eight-hour workday: must lie down 1 hour during an eight-hour workday; must elevate legs 1 hour during an eight-hour workday; must alternate positions every 2 hours; can reach 30 minutes in an eight-hour workday; can handle 2 hours during an eight-hour workday; can bend 30 minutes in an eight-hour workday; and can never stoop, kneel, or crouch. Dr. Lim indicated that he was not sure how many

absences the claimant would have per month, and he stated that her impairments had not lasted 12 months and were not expected to last 12 months.

(Tr. 680, 521-24.) In the section seeking the basis for his opinion, Dr. Lim stated, verbatim:

> [Plaintiff] has been seen in our office for the past couple of years and has been diagnosed with lumbar radiculopathy. The patient cannot sit, stand, lift or Handle [sic] anything for long periods of time. She cannot lift or handle anything over 20 lbs. AT ALL!! She shouldn't even handle anything over 10 lbs. It should just be 0-5 lbs. She can never crawl, kneel, crouch, or stoop at all. She should be very careful with her lower back. She could really hurt herself if she's not careful. This is for now, it may change in the next few months.

(Tr. 524 (emphasis in original).)[7] Dr. Lim's narrative was not substantiated by reference to any clinical or laboratory findings. He failed to set forth Plaintiff's medical history, other than to state that she had been seen at his office for "the past couple of years," and other than baldly setting forth Plaintiff's diagnosis, failed to explain what signs or symptoms supported his diagnosis. Instead, the narrative essentially reiterates the limitations that were identified in the check-the-box section of the form and suggests that Plaintiff "should be very careful." (Id.)

As summarized by ALJ Shimer, the second medical sources statement (hereinafter "MSS 2"), which was undated, but was submitted to Plaintiff's counsel in June 2010, set forth the following limitations:

> lift and/or carry up to 15 pounds for 3 hours and up to 5 pounds for 5 hours during an eight-hour workday; sit 3 hours at one time and only 3 hours total during an eight-hour workday; stand/walk 2 hours at one time and only 2 hours total during an eight-hour workday; no longer needs to lie down or elevate legs during an eight-hour workday; can reach 3 hours in an eight-hour workday; can handle 3 hours during an eight- hour workday; can finger 8 hours; can bending/twisting 45 minutes in an eight-hour workday; can now stoop, kneel, and crouch 30 minutes

---

[7] Underneath this hand-written text the words "not temporary" were written. (Tr. 524.) The import of these words is not clear.

each in an eight-hour workday; has no cervical spine limitations; would be absent more than 4 absences per month; and her impairments have lasted or were expected to last 12 months.

(Tr. 681, 1052-55.)  For MSS 2, Dr. Lim completed the check-the-box part of the form but failed to offer any comments and the section seeking the information upon which Dr. Lim based his opinion was left blank.  (Tr. 1052-55.)

As summarized by ALJ Shimer, the last medical source statement (hereinafter "MSS 3"), submitted in July 2012, set forth the following limitations:

lift and/or carry up to up to 10 pounds for 1 hour in an eight-hour workday and up to 5 pounds for 2 hours; sit 2 hours at one time and a total of 3-4 hours during an eight-hour workday; stand/walk 2 hours at one time and a total of 3-4 hours during an eight-hour workday; must alternate positions every 2 hours; can reach 45 minutes in an eight-hour workday; can handle 4 hours during an eight-hour workday; can finger 5 hours during an eight-hour workday; can stoop 30 minutes in an eight-hour workday; and would be absent more than 4 absences per month.

(Tr. 681, 1220-22.)  As with MSS 2, MSS 3 contained no comments, there is no narrative of any kind and the check-the-box portion of the form, although complete, is not substantiated by any medical history or diagnostic, clinical or laboratory findings.  (Tr. 1220-22.)

As required by the remand order, ALJ Shimer gave further consideration to Dr. Lim's three medical source statements and found that they were entitled to little weight because Dr. Lim's opinions were "ever-changing" and the changes were not supported by objective medical evidence.  (Tr. 681.)  ALJ Shimer noted that in MSS 1, "Dr. Lim first gave an opinion that was very restrictive; however, he indicated that Plaintiff's impairment had not and would not last 12 months" and that he was "not sure" how many days per month Plaintiff would miss work because of her impairments.  (Tr. 680-81.)  Among other limitations identified in MSS 1, Dr. Lim opined that Plaintiff could lift or carry only five pounds for one hour in an 8-hour workday, could sit, stand or walk for only two to three hours at one time and in total over the course of an

8-hour workday, must alternate positions every two hours and would need to lie down and elevate her legs for one hour each in an 8-hour workday. (Tr. 521.)

Several months later, in MSS 2, Dr. Lim opined that Plaintiff would miss more than four days a month because of her impairments and that her impairments were expected to last at least twelve months. (Tr. 1055.) ALJ Shimer noted that while Dr. Lim had been treating Plaintiff "for a couple of years" by the time he submitted MSS 1, he was unable to determine how many days of work she would miss per month, but by the time he submitted MSS 2 in June 2010, Dr. Lim was able to opine that Plaintiff would miss four days of work per month. (Id.) Nowhere does Dr. Lim suggest what objective medical evidence led him to this conclusion and there is no dispute that the record contains no evidence that Dr. Lim treated Plaintiff after January 2010. Moreover, in contrast to the extreme limitations he identified in MSS 1, Dr. Lim noted that Plaintiff could lift or carry up to fifteen pounds for three hours in an 8-hour workday and five pounds for five hours during an 8-hour workday, and that she did not need to lie down, elevate her legs or alternate position at all. Again, Dr. Lim does not cite to any objective medical evidence to support this significantly less restrictive change, nor does the record reflect that he provided any treatment to Plaintiff at any time between MSS 1 and MSS 2.

By the time MSS 3 was submitted in July 2012, Dr. Lim had returned to the more restrictive limitations, but not the same as those identified in MSS 1. In MSS 3, Dr. Lim noted that Plaintiff could lift or carry up to ten pounds for one hour in an 8-hour workday and up to five pounds for two hours in an 8-hour workday, she could sit, stand or walk for two hours at one time and for three to four hours total in an 8-hour workday, she must alternate her position every two hours, must lie down one hour and must elevate her legs for two hours in an 8-hour

workday.  As with MSS 2, there were no treatment notes to substantiate these changes and Dr. Lim failed to cite to any objective medical evidence to support his opinion.

Dr. Lim changed significant portions of his opinion several times over a period of years without first having examined or treated Plaintiff and without citing to any objective medical or laboratory evidence that would support the changes.  Moreover, to the extent that Dr. Lim set forth any opinion, he did so in only the most cursory way using a check-the-box form without any substantiation.  Under these circumstances, ALJ Shimer did not err in giving Dr. Lim's opinions little weight.  See Ellars v. Comm'r of Soc. Sec., 647 F. App'x. 563, 566-67 (6th Cir. 2016) (finding that ALJ did not err in not giving significant weight to treating physician opinion where the opinion consisted of a two-page Physical Capacity Evaluation form, without any explanation or citation to clinical test results, observations or other objective findings); see also 20 C.F.R. § 404.1527(c)(3)("The better an explanation a source provides for an opinion, the more weight we will give that opinion.")

Finally, Plaintiff contends that ALJ Shimer was "playing doctor" when he found, incorrectly, that Plaintiff had been evaluated by Dr. Lim only five times, and that Dr. Lim's limitations were not supported by his treatment notes or by imagining reports that Dr. Lim may have reviewed.  An ALJ impermissibly plays doctor by substituting his or her own judgment for that of medical experts whose opinions are supported by medical evidence.  Simpson v. Comm'r of Soc. Sec., 344 F. App'x. 181, 194 (6th Cir. 2009).  On the other hand, an ALJ is not bound to accept the opinion of a medical expert that is not supported by reliable reasoning or objective medical evidence.  Id.; 20 C.F.R. § 404.1527(c)(3).  An ALJ must also consider whether a medical opinion is consistent with the record as a whole.  Id. § 404.1527(c)(4); Irvin v. Soc. Sec. Admin., 573 F. App'x. 498, 501 (6th Cir. 2014).  An ALJ does not improperly substitute his own

medical opinion for that of a medical expert where he complies with SSA "regulations [by] evaluat[ing] the medical evidence to determine whether a claimant is disabled," Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 726-27 (6th Cir. 2013) (citations omitted).

Even assuming that ALJ Shimer incorrectly noted the number of visits that Plaintiff had with Dr. Lim, Plaintiff fails to demonstrate that ALJ Shimer substituted his medical opinion for that of Dr. Lim.[8] Plaintiff notes generally that Dr. Lim "viewed various lumbar and thoracic MRI reports and found on examination that [Plaintiff] was having spasms in her back muscle and decreased sensation in her left foot" and that Dr. Lim referred Plaintiff for physical therapy, "and presumably would have had access to the [physical therapy] records" which noted "markedly severe" paraspinal muscle spasms. (Doc. No. 22 at Page ID# 1457.) Plaintiff suggests that Dr. Lim's findings, essentially that Plaintiff suffered from muscle spasms in her back and decreased sensation in her left foot, if they had been considered by ALJ Shimer, would have established that Dr. Lim's opinions were entitled to controlling weight. However, ALJ Shimer did not ignore Dr. Lim's findings.

With respect to Plaintiff's black problems, ALJ Shimer noted that Dr. Lim found that Plaintiff suffered from "lumbar pain and muscle spasms" but, ALJ Shimer also noted that Dr. Lim found that Plaintiff had 5/5 motor strength, and treatment consisted of a back brace. (Tr.

---

[8] Without citation to any portion of the administrative record, Plaintiff states that Dr. Lim evaluated Plaintiff 10 times, and not 5 times, as cited by ALJ Shimer. Be that as it may, while ALJ Shimer's counting may be off, Plaintiff does not suggest, and there is no evidence to suggest, that ALJ Shimer did not review all of the medical evidence of record. See Tr. 674, 677, 682 (stating that ALJ Shimer carefully reviewed all of the evidence); see also Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006) (noting that "'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.' " (quoting Loral Defense Systems–Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999)). Indeed, in his recitation of the relevant medical evidence in this case, ALJ Shimer included information gleaned from more than 10 encounters with Dr. Lim. (Tr. 679-80.)

681-2.) ALJ Shimer noted that Dr. Lim recommended, at least three times, that Plaintiff be treated with epidural steroid injections, but Plaintiff refused. (Tr. 679, 682.)[9] ALJ Shimer acknowledged that Plaintiff attended physical therapy, but found that Plaintiff experienced "a decrease in her overall symptoms" and to the extent that she did not experience relief, her failure to comply with her treatment plan and to attend all of her appointments resulted in Plaintiff being discharged from physical therapy prior to meeting all of her treatment goals. (Tr. 679.) With respect to Plaintiff's left foot problems, ALJ Shimer noted that Dr. Lim found "decreased sensation in the left foot," but also found no motor deficits, normal gait and station. (Tr. 679-80.) Moreover, ALJ Shimer noted that "EMG studies of [Plaintiff's] bilateral upper and lower extremities dated November 2007 and December 2009 were completely normal." (Tr. 682.)

Plainly, ALJ Shimer did not make independent medical findings or attempt to substitute his opinion for that of Dr. Lim. Rather, ALJ Shimer did what he was required to do; he evaluated the medical evidence and concluded that Dr. Lim's opinions were not supported by the record as a whole. The evidence substantially supported ALJ Shimer's determination.

As to Plaintiff's contention that ALJ Shimer failed to give good reasons for discounting Dr. Lim's opinions, this claim is patently false. Plaintiff appears to be equating reasons she likes with "good reasons." However, this is not the standard. While Plaintiff may not like the reasons he gave, as set forth in great detail above, ALJ Shimer was thorough in explaining why Dr. Lim's opinions were not entitled to controlling weight and were only entitled to little weight. (See 680-82.)

---

[9] Plaintiff testified before ALJ Helm at her first hearing that she was working with her physician to schedule an appointment to obtain epidural steroid injections. (Tr. 37.) Although the first full hearing before ALJ Helm was held on February 22, 2010, there is no evidence in the record demonstrating that Plaintiff ever obtained epidural steroid injections by the time of her hearing before ALJ Shimer on June 28, 2012.

In Plaintiff's third claim of error, she argues that ALJ Shimer erred in giving controlling weight to the opinion of non-examining state agency consultant, Nathaniel D. Robinson, M.D. Specifically, Plaintiff contends that ALJ Shimer should not have relied solely on Dr. Robinson's RFC assessment, that Dr. Robinson's opinion was inconsistent with the rest of the evidence and that he considered only a small number of her medical records in crafting his RFC assessment.

"In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); see also Hoskins v. Comm'r of Soc. Sec., 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). However, the SSA is only required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010) (internal citation omitted). Indeed, the Sixth Circuit has long held that the that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." Wright v. Colvin, No. 1:15-cv-01931, 2016 WL 5661595, at *9 (N.D. Ohio Sept. 30, 2016) (citing Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 506-07 (6th Cir. 2006). Likewise, the ALJ is "under no special obligation" to provide great detail as to why the opinions of the nonexamining providers "were more consistent with the overall record" than the examining, but nontreating providers. Norris Comm'r of Soc. Sec., 461 F. App'x 433, 440 (6th Cir. 2012). As long as "the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements. . . ." Id.

Plaintiff claims that ALJ Shimer erred by solely relying on Dr. Robinson's RFC assessment. However, ALJ Shimer did not solely rely on Dr. Robinson's RFC assessment. ALJ Shimer's RFC contains a sit/stand option that was not in Dr. Robinson's RFC assessment. ALJ Shimer included such a restriction plainly concluding that Dr. Lim's opinion on this aspect of the RFC assessment was consistent with the evidence of record. ALJ Shimer also relied on Plaintiff's testimony that she "can perform activity in 1-2 hour intervals before needing to rest." (Tr. 683.)

After reviewing the record, Dr. Robinson prepared an RFC Assessment. (Tr. 340-47.) ALJ Shimer did not, as Plaintiff claims, give Dr. Robinson's RFC assessment controlling weight; rather he gave Dr. Robinson's opinion "significant weight." (Tr. 682.) ALJ Shimer amply explained why he accorded Dr. Robinson's opinion significant weight, stating:

> After a thorough review of the evidence, the undersigned accords significant weight to the opinion [of Dr. Robinson] that the claimant is limited to light exertional activity with occasional postural activities (Exhibit 6F). This reduced range of light work activity is fully supported by physical exam findings during the period in question. In 2007, exams documented full neck motion, no motor or sensory deficits, normal reflexes, full range of spinal motion, and negative neurologic findings (Exhibits 1F, 2F, 3F, 25F). One exam in 2008 documented diminished back motion with discomfort (January); however, subsequent exams in 2008 showed no motor or sensory deficits and full spinal motion with no pain on movement (Exhibits 3F, 5F, 18F). During 2009, physical exams consistently showed 5/5 motor strength, normal gait and station, and normal fine finger movements (Exhibits 8F, 11F, 14F). In 2010, exams showed normal extremity motion, no neurological deficits, and normal gait (Exhibits 12[F], 13[F] 15[F], 20F). During 2011, the claimant was noted to have painless range of neck motion with no tenderness, normal back motion with no tenderness, normal extremities, and no motor or sensory deficits (Exhibit 21F).
>
> Diagnostic studies also support the finding that the claimant can perform the reduced range of light work activity. EMG studies from November 2007 and January 2010 were normal (Exhibits 10F, 12F). An MRI from August 2007 showed disc protrusions throughout the lumbar spine with no neural displacement, except for an annular tear at L3-4 with a disc protrusion impinging on the right S1 nerve root in the lateral recess (Exhibit 5F); however, a follow up

MRI showed only mild/slight findings as detailed above (Exhibit 8F). An MRI of the thoracic spine in December 2008 showed minimal discogenic disease within the mid-thoracic spine without central canal or neural foraminal stenosis (Exhibit 18F). In July 2009, x-rays showed mild anterior spurring at L2-3 and L3-4. Imaging of the cervical spine in December 2011 showed no fracture or subluxation, and lumbar spine imaging showed slight degenerative spurring and disc space narrowing at L2-3 and L3-4 (Exhibit 21F).

(Tr. 682-83.) ALJ Shimer's decision to accord Dr. Robinson's RFC assessment significant weight is supported by substantial evidence.

Plaintiff's claim that ALJ Shimer should not have relied on Dr. Robinson's RFC Assessment because it was inconsistent with the medical evidence and was based on only a limited number of treatment notes is unavailing. Plaintiff complains that Dr. Robinson failed to sufficiently analyze the record evidence prior to completing his RFC Assessment and that he "cherry picked" Plaintiff's treatment records. See Doc. No. 22 at PageID# 1434.[10] However, Plaintiff does not so much claim that Dr. Robinson relied on inaccurate information, as she complains that he misinterpreted the information that he found in the record. For example, Plaintiff objects to Dr. Robinson's characterizing her as "essentially healthy," yet the medical record on which Dr. Robinson relied stated that assessment verbatim. (Tr. 262.) While those

---

[10] In her motion, Plaintiff presented nearly 62 pages of "facts" in her statement of the case. (Doc. No. 22 at Page ID ## 1389-1450.) By contrast, her argument comprised a little less than 12 pages. (Id. at Page ID ## 1450-1461.) Plaintiff also included nearly 14 pages of "selected excerpts" from Plaintiff's medical records. (Doc. No. 22-1 at Page ID ## 1463-1471; Doc. No. 22-2 at Page ID## 1473-1476.) What Plaintiff failed to do, was apply the facts as she laid them out, to the law as she believed it to be. It appears that Plaintiff thinks that the Court should match the facts she presented with the law she argues. This, however, is the Plaintiff's, and not the Court's, obligation. See Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law & Procedure in Federal Court § 9:32 (Feb. 2017 Update) (explaining that "the argument section of the brief is the legal portion of the document. Each attorney must set forth the legal theories that support his or her client's position and identify the facts that support those theories. Finally, each attorney must tie the facts to the legal theory, to show how the legal theory, when connected with the facts, leads to the inexorable conclusion that the client should win. Therefore, it should be emphasized that the facts of the case are as important in the argument section as they are in the statement of facts");

same records went on to describe the history of Plaintiff's back pain, they did not suggest that she had any other condition that would have rendered her other than "essentially healthy;" for example, heart disease or diabetes. (Id.) Likewise, Plaintiff complains that Dr. Robinson found that the January 19, 2008 record from Plaintiff's visit to the Summit Medical Center emergency department demonstrated that Plaintiff had no motor or sensory deficits, but Dr. Robinson failed to consider that Plaintiff was at the emergency department because she injured her back while leaning over to pick something up.[11] However, Dr. Robinson could reasonably have concluded that the diagnosis and treatment plan Plaintiff obtained while in the emergency department was related to an acute back injury caused by her attempt to pick "something up," rather than an on-going disabling condition that limited her ability to work. Therefore, determining that Plaintiff had no motor or sensory deficits could have aided Dr. Robinson's in concluding that this was an acute incident, rather than an on-going problem, and thus it was not unreasonable for him to focus on that information.

Plaintiff's final complaint regarding ALJ Shimer giving significant weight to Dr. Robinson's opinion is that Dr. Robinson did not examine the entire record but only a small portion of the medical evidence. However, Plaintiff does not suggest that any meaningful change in her condition that would have impacted Dr. Robinson's RFC assessment occurred between the time period covered by the records that Dr. Robinson reviewed and the time period thereafter.

---

[11] Plaintiff fails to include that she reported that the item she was picking up was a play pen. Tr. 971.

In Plaintiff's fourth, and final, claim of error, she argues that ALJ Shimer erred when he found her testimony not entirely credible. Specifically, she contends that ALJ Shimer's credibility finding was unreasonable and not supported by the evidence.

Although the ALJ, not the court system, is tasked with evaluating a witness' credibility, credibility findings must be "grounded in the evidence and articulated in the determination or decision." SSR 96-7P, 1996 WL 374186 at *4 (July 2, 1996); Rogers v. Comm'r, 486 F.3d at 247. In addition to the objective evidence, the ALJ should consider the following factors when assessing the credibility of a claimant's statements regarding her symptoms:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186 at * 3. Under SSR 96–7p the ALJ is required to "consider" the seven-listed factors, but there is no requirement that the ALJ discuss every factor. See White, 572 F.3d at 287; see also Coleman v. Astrue, No. 2:09–cv–36, 2010 WL 4094299, at * 15 (M.D. Tenn. Oct. 18, 2010) (finding that "[t]here is no requirement [ ] that the ALJ expressly discuss each listed factor."); Roberts v. Astrue, No. 1:09–cv–1518, 2010 WL 2342492, at * 11 (N.D.

Ohio June 9, 2010) (finding that "the ALJ need not analyze all seven factors contained in SSR 96–7p to comply with the regulations").

Credibility determinations concerning a claimant's subjective complaints are within the province of the ALJ. See Gooch v. Secretary of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. See Walters, 127 F.3d at 528. The SSA's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." Ulman, 693 F.3d at 714; see Warner, 375 F.3d at 392 (noting that credibility findings made by the ALJ are given great deference). "Claimants challenging the ALJ's credibility determination face an uphill battle." Daniels v. Comm'r, 152 F. App'x 485, 488 (6th Cir. 2005); see Ritchie v. Comm'r, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that "[w]e have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'") "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor while testifying." Jones, 336 F.3d 469, 476 (6th Cir. 2003).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." Rogers, 486 F.3d at 248. The Rogers court observed that Social Security Ruling 96–7p requires that the ALJ explain his or her credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Rogers, 486 F.3d at 248.

ALJ Shimer based his credibility determination on a host of findings. His recitation of the evidence of record specifically detailed all the ways in which the medical evidence contrasted

with Plaintiff's testimony. For example, he recognized that Plaintiff alleged disabling back pain, however, her imagining and EMG studies were largely normal. (Tr. 679.) By and large, her medical examinations demonstrated normal motor strength, normal gait and station, and full range of motion of the extremities with no motor or sensory deficits. (Id.) ALJ Shimer considered Plaintiff's activities of daily living that included being the single mother to four young children, who at the time of the hearing before ALJ Shimer which occurred five years after disability onset, were 12, 10, 8 and 5 years old. (Tr. 678, 711.) See Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 543 (6th Cir. 2014) (noting that "[t]he ALJ also properly took into account [the plaintiff's] daily activities which included caring for two school-aged children and performing household chores"). ALJ Shimer also considered Plaintiff's part-time employment. (Tr. 678.) See Miller v. Comm'r of Soc. Sec., 524 F. App'x 191, 194 (6th Cir. 2013) (explaining that "the ALJ did not err by considering [the plaintiff's] ability to maintain part-time employment as one factor relevant to the determination of whether [the plaintiff] was disabled) (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971). Lastly, he considered nine "additional factors" which he found "tend to reduce the [Plaintiff's] general credibility regarding disabling pain." (Tr. 683.)

ALJ Shimer primarily relied on the medical evidence and Plaintiff's activities of daily living, including caring for her children and working part-time, in finding that Plaintiff testimony about disabling pain was not entirely credible. Nevertheless, Plaintiff objects to ALJ Shimer's reasoning regarding the nine additional factors that he found tended to reduce Plaintiff's credibility. Even assuming that ALJ Shimer's reasoning regarding the nine additional factors was flawed, Plaintiff does not explain how she thinks this impacted his credibility finding in light of the fact that ALJ Shimer did not solely, or even primarily, rely on the nine factors for

determining Plaintiff's credibility. ALJ Shimer sufficiently explained the basis for his credibility analysis, by referring, throughout the decision, to ways in which Plaintiff's allegations of disabling pain failed to match the objective medical evidence. (Tr. 677-80, 683-84.)

In sum, Plaintiff's claims of error have no merit, and the decision of the ALJ is supported by substantial evidence on the record as a whole. Accordingly, the ALJ's decision will be affirmed.

## V.  Conclusion

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record will be DENIED and the decision of the SSA will be AFFIRMED. An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE